IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROSE MARIE M. TESTA**, | CIVIL ACTION |
| Plaintiff, | |
| *v.* | NO. 21-5148-KSM |
| **BROOMALL OPERATING COMPANY, L.P.,** *et al.* | |
| Defendants. | |

## MEMORANDUM

**MARSTON, J.**                                                                                      **May 26, 2022**

Mary DeMarco tragically passed away from COVID-19 in April 2020 while residing at Broomall Rehabilitation and Nursing Center ("Broomall Rehab"). (Doc. No. 13 ¶ 9.) Mrs. DeMarco's daughter, Plaintiff Rose Marie M. Testa, as Executrix of the Estate of Mary DeMarco, brings claims against the institutions that own Broomall Rehab, Broomall Operating Company, LP, Broomall Operating GL, LLC, SavaSeniorCare, LCC, and Terpax, Inc. (the "Institutional Defendants"), and Broomall Rehab administrators Vincent Rupert and Elizabeth Marasco-Kennedy (the "Individual Defendants" and, together with the Institutional Defendants, "Defendants"). (*Id.*) Plaintiff alleges Defendants were not adequately prepared to respond to a pandemic and acted negligently in caring for elderly patients at Broomall Rehab in the early days of the COVID-19 pandemic, which proximately caused Mrs. DeMarco's death. (*Id.* ¶¶ 122–214.)

On November 2, 2021, Plaintiff initiated this action in the Delaware County Court of Common Pleas against *only* the Institutional Defendants. (Doc. No. 1-1.) On November 22, the Institutional Defendants timely removed the action to federal court, asserting that this Court has

federal question and diversity jurisdiction over this case. (Doc. No. 1.) The Institutional Defendants then filed motions to dismiss. (Docs. No. 10–12.) Rather than responding to the motions to dismiss, Plaintiff amended her complaint in two ways: the Amended Complaint clarifies that Plaintiff is not bringing claims for willful misconduct (such that there is no federal question jurisdiction) and brings negligence and wrongful death claims against the Individual Defendants. (Doc. No. 13.) The addition of the Individual Defendants destroys diversity jurisdiction. (*Id.*)

Presently before the Court are Defendants' motion to strike the Amended Complaint (Doc. No. 14) and Plaintiff's motion to remand (Doc. No. 23). For the reasons below, Defendants' motion to strike is granted in part, and Plaintiff's motion to remand is denied.

## I. BACKGROUND

### A. *Factual Background*

Accepting the allegations in the Amended Complaint as true, the relevant facts are as follows.

Following a fall at her home, Mrs. DeMarco was admitted to Broomall Rehab on February 6, 2019, for nursing, rehabilitation, and general self-care services. (Doc. No. 13 ¶ 25.) In April 2019, Mrs. DeMarco was moved to "long term care." (*Id.* ¶ 28.) Although she was first placed in the end stage dementia unit with a roommate, she was later moved to a single room in the nursing dementia unit. (*Id.*) On March 11, 2020, Broomall Rehab placed its facility on "lockdown" due to the COVID-19 pandemic, and the residents were no longer allowed to have visitors. (*Id.* ¶ 29.) Shortly after the nursing home went on lockdown, Plaintiff dropped off laundry for her mother and observed nurses "taking off [personal protective equipment] and placing it into their bags with names on them." (*Id.* ¶ 30.)

On April 2, the nursing dementia unit was "cleared out in preparation for any potential COVID-19 cases at the facility," and Mrs. DeMarco was transferred back to the end stage dementia unit, where she again had a roommate. (*Id.* ¶ 31.) Plaintiff was unnerved by this move and asked a caseworker at Broomall Rehab whether anyone at the nursing home had tested positive for COVID-19; they informed her that no one had. (*Id.* ¶ 32.) On April 8, Plaintiff had a video call with her mother and noticed that she was "a little disoriented." (*Id.* ¶ 37.) On April 12, Mrs. DeMarco had an elevated temperature. (*Id.* ¶ 38.) She took a Tylenol, and a nurse told Plaintiff they would take bloodwork the following day. (*Id.*) On April 15, Mrs. DeMarco fell in her room. (*Id.* ¶ 39.) Mrs. DeMarco's medical records from the day of the fall indicate that her roommate had tested positive for COVID-19, and the staff suspected that Mrs. DeMarco had COVID-19, as well. (*Id.*) The staff only alerted Plaintiff that her mother had COVID-19 on April 17, after a test confirmed the diagnosis. (*Id.* ¶¶ 42–43.)

Although she had tested positive for COVID-19, Mrs. DeMarco was permitted to travel out of her room to interact with other residents and get her nails done until she was placed in isolation on April 19. (*Id.* ¶¶ 44–45.) On April 20, Plaintiff had a "window visit" with her mother and noticed that she "was having trouble holding her head up, her teeth were completely brown, and she looked delirious." (*Id.* ¶ 46.) Mrs. DeMarco passed away on April 22; her cause of death was "Sequelae of Novel COVID-19 Infection." (*Id.*)

Mrs. DeMarco alleges Broomall Rehab's owners' and administrators' negligent and reckless acts led her mother to contract (and ultimately pass away from) COVID-19. Among other things, Plaintiff alleges Defendants failed to (1) ensure employees followed proper hygiene protocols, (2) equip employees with adequate personal protective equipment, and (3) ensure the nursing home was properly staffed to serve the needs of its residents. (*Id.* ¶ 205.)

### B.  *Procedural History*

On November 2, 2021, Plaintiff initiated this action in the Delaware County Court of Common Pleas against only the Institutional Defendants.[1] (Doc. No. 1-1.) The Institutional Defendants timely removed the matter on the grounds that this Court had both diversity and federal question jurisdiction. (Doc. No. 1 at 5–8.) On December 17, the Institutional Defendants moved to dismiss the Original Complaint for lack of personal jurisdiction and failure to state a claim. (Docs. No. 10–12.)

On December 29, Plaintiff amended her complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(A). (Doc. No. 13.) Plaintiff's Amended Complaint clarified that she was not bringing claims for willful misconduct under the civil liability section of the Public Readiness and Emergency Preparedness ("PREP") Act and added negligence and wrongful death claims against the Individual Defendants (who had not been parties to the lawsuit prior to the amendment). (*Id.*) The Individual Defendants are residents of Pennsylvania (*id.*), so their participation in this lawsuit means there is no longer complete diversity of parties. On January 7, 2022, Defendants moved to strike the Amended Complaint.[2] (Doc. No. 14.) Plaintiff opposes the motion and filed a motion to remand the matter back to the Delaware County Court of Common Pleas. (Doc. No. 23.) Defendants oppose the motion to remand. (Doc. No. 29.)

---

[1] In the Original Complaint, Plaintiff made clear that she was bringing the suit "directly against Broomall for its managerial and operational negligence, carelessness, recklessness, and willful and wanton conduct" and not against the "'frontline' staff that provided direct care to residents." (Doc. No. 1-1 ¶ 19.)

[2] On January 12, the Institutional Defendants also moved to dismiss the Amended Complaint for lack of personal jurisdiction and failure to state a claim. (Docs. No. 15–17.) The Court denied the motions to dismiss as moot without prejudice pending the resolution of the motion to strike and the motion to remand. (Doc. No. 28.)

## II.   MOTION TO STRIKE

The Court first considers the motion to strike. Defendants argue that the joinder of the Individual Defendants was impermissible and, accordingly, the Amended Complaint should be stricken.[3] (Doc. No. 14-1 at 9.)

### A.   *Legal Standard*

The parties disagree as to which standard the Court should apply in reviewing the joinder. Defendants argue that the Court should review the joinder under 28 U.S.C. § 1447(e) (Doc. No. 14-1 at 9), and Plaintiff argues that the Court should apply the standard joinder analysis, "a decidedly plaintiff-friendly doctrine" (Doc. No. 22 at 7 (quoting *McDermott v. CareAllies, Inc.*, 503 F. Supp. 3d 225, 233 (D.N.J. 2020)).

Under Section 1447(e), where a plaintiff "seeks to join additional defendants whose joinder would destroy subject matter jurisdiction" after removal, the court "may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). That is, the court is required to review diversity-destroying, post-removal joinders under Section 1447(e) where the plaintiff *seeks leave* to join additional defendants. *Id.* But Section 1447(e) does not apply where, as here, the plaintiff joins additional defendants *as of right*. *Id.*; *see also Avenatti v. Fox News Network, LLC*, No. 20-cv-01541-SB, 2021 WL 2143037, at *2 (D. Del. May 26, 2021) (Bibas, J.).

Although Section 1447(e) does not govern where the plaintiff joins additional defendants

---

[3] Defendants also argue that the Court should strike the Amended Complaint because Plaintiff did not seek leave before filing the amendment. (Doc. No. 14-1 at 8–9.) But Plaintiff was not required to do so. Rule 15 provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . ." Fed. R. Civ. P. 15(a)(1) (emphasis added). Plaintiff filed the Amended Complaint 12 days after Defendants filed motions to dismiss under Rule 12(b), so she was permitted to amend the Complaint as a matter of course—i.e., without seeking leave from the Court. *See Camilli v. Wal-Mart Stores, Inc.*, CIVIL ACTION NO. 18-2849, 2019 WL 1432481, at *2 (E.D. Pa. Mar. 28, 2019).

as a matter of right, a number of district courts within the Third Circuit have nevertheless reviewed such joinders under Section 1447(e).  *See, e.g.*, *Maier Solar Eng'g, LLC v. Wells Fargo, NA*, Civ. Action No. 21-13292 (FLW) 2022 WL 884367, at *3 (D.N.J. Mar. 25, 2022) ("[S]ection 1447(e) . . . appl[ies] 'even when the amendment of the complaint ordinarily would be as a matter of course.'"  (quoting 14 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3739.1 (4th ed.))); *Lane v. CBS Broad. Inc.*, No. Civ.A. 08-3175, 2008 WL 3930287, at *4 (E.D. Pa. Aug. 27, 2008) ("In this district, where joinder of a new party would destroy diversity, courts routinely analyze the joinder under 28 U.S.C. § 1447(e), even when there has been no responsive pleading served."); *Doe No. 4 v. Soc'y for Creative Anachronism, Inc.*, Civil Action Nos. 07-1439, 07-1440, 2007 WL 2155553, at *3 (E.D. Pa. July 25, 2007) ("[W]here the [amendment] is to join a nondiverse party, the [amendment] must be reviewed under 28 U.S.C. Section 1447(e), whether or not the defendant has served its responsive pleading.").

      The Court declines to adopt this approach, as the plain language of Section 1447(e) makes clear that it applies only where the plaintiff *seeks leave* to join additional defendants.  *See Avenatti*, 2021 WL 2143037, at *2.  Instead, we will follow the approach Judge Bibas recently took (while sitting by designation in the District of Delaware) in *Avenatti*.  Although we are not permitted to review the joinder under Section 1447(e), Rule 21 permits the court, "[o]n motion or on its own," to "add or drop a party," so we will exercise our power to review the joinder under Rule 21.  Fed. R. Civ. P. 21; *CBG Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 381 n.6 (3d Cir. 2004) ("Moreover, it is well established that courts . . . have the power under Fed. R. Civ. P. 21 to dismiss dispensable parties to the suit in order to preserve diversity.") In reviewing a joinder under Rule 21, courts "should consider . . . the same factors that they

6

consider under § 1447(e) in deciding whether to drop a party to maintain diversity." *Avenatti*, 2021 WL 2143037, at *2. Accordingly, the Court will review the joinder under Rule 21 and will apply the Section 1447(e) analytical framework by analogy.

While the Third Circuit has not yet set forth an analytical framework for applying Section 1447(e), district courts within the Third Circuit have followed the approach laid out by the Fifth Circuit in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987). *See Aldorasi v. Crossroads Hosp. & Mgmt. Co., LLC*, 344 F. Supp. 3d 814, 826 (E.D. Pa. 2018); *Taylor v. GGNSC Phila., LP*, CIVIL ACTION NO. 14-7100, 2015 WL 5584781, at *4 (E.D. Pa. Sept. 23, 2015); *see also Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 840–41 (3d Cir. 2014) (explaining that the Third Circuit has "not yet addressed the appropriate analytical approach to § 1447(e)" (and declining to do so) but acknowledging that the Fifth Circuit's approach in *Hensgens* may be instructive). In *Hensgens*, the Fifth Circuit set forth four factors that courts should consider in determining whether to permit a plaintiff to join non-diverse defendants post-removal:

(1) The extent to which the purpose of the amendment is to defeat federal jurisdiction;

(2) Whether plaintiff has been dilatory in asking for amendment;

(3) Whether plaintiff will be significantly injured if amendment is not allowed; and

(4) Any other factors bearing on the equities.

*Hensgens*, 833 F.2d at 1182. The court must "balance the equities and determine whether amendment should be permitted." *Id.*

### B. Analysis

We consider each of the *Hensgens* factors in turn.

#### 1. Purpose

Under the first *Hensgens* factor, the Court must consider whether Plaintiff amended her

complaint for the purpose of defeating diversity jurisdiction. *Id.* In assessing whether a plaintiff joined defendants for the purpose of destroying diversity, courts consider whether the plaintiff knew of the additional defendants at the time she filed the original complaint or whether the plaintiff gained additional information regarding the identities of the additional defendants through post-filing developments. *See Montevalo v. John Doe I*, Civil Action No. 10–2617, 2010 WL 3928536, at *4 (E.D. Pa. Oct. 5, 2010). Where a plaintiff was aware of the additional defendants at the time she initiated the lawsuit but chose not to name them, that suggests she joined them after removal in order to destroy diversity. *Id.*

Plaintiff contends that she was unaware of the identities of the Individual Defendants at the time she filed this and only "recently discovered the names of the individuals based upon a separate Complaint brought against Broomhall [sic] in a series of separate actions," including *Hereford v. Broomall Operating Company*, No. 21-3922 (E.D. Pa.). (Doc. No. 22 at 10–11.) However, based on the timing of the filings in *Hereford* and Plaintiff's counsel's concessions at oral argument, the Court finds Plaintiff's counsel was aware of the individual defendants' identities at the time he initiated this action. Mr. Rupert and Ms. Marasco-Kennedy were first named as defendants in the *Hereford* amended complaint, which was filed on September 17, 2021—more than six weeks *before* Plaintiff initiated this action. (*Hereford* Doc. No. 11.) At oral argument, Plaintiff's counsel admitted that he was "keeping an eye on" *Hereford* and explained that he would have been aware of any filings in that matter (such as the amended complaint) within approximately one month of the filings being made on the docket. (May 16, 2022 Hr'g Tr. at 3–4, 8–9.) This suggests that Plaintiff's counsel was aware of the Individual Defendants' identities at the time the Original Complaint was filed but made a strategic choice not to name them as defendants. That in turn indicates that the sole purpose in *now* joining the

8

Individual Defendants is to escape the jurisdiction of this Court. *See Arevalo v. Brighton Gardens, Sunrise Senior Living, LLC*, Civil Action No. 15-2563 (MAS), 2016 WL 4975199, at *3 (D.N.J. Sept. 16, 2016) (finding that a plaintiff added a defendant solely to defeat diversity jurisdiction where the plaintiff had sufficient information to identify the "would-be-defendant" at the time he filed the initial complaint); *Betters v. State Automobile Mutual Ins. Co.*, Civil Action No. 11 – 1648, 2012 WL 12892223, at *3 (W.D. Pa. June 21, 2012) ("The Court finds that the first *Hensgens* factor weighs against Plaintiff.  When Plaintiff filed his original Complaint, he was aware of Fisher and IRC and their activities in the matter, as demonstrated in the allegations set forth therein, and yet he chose not to name them as Defendants in the original Complaint.").

The fact that the Original Complaint did not name any "John Doe" defendants makes it even more likely that Plaintiff joined the Individual Defendants solely to destroy diversity.  As noted above, Plaintiff argues that she did not name the Individual Defendants because she did not know their identities.  (Doc. No. 22 at 10–11.)  But had she truly intended to join the administrator and director of nursing as defendants upon learning their identities, Plaintiff would have listed John Doe defendants in the Original Complaint.[4]  In fact, the original complaints in nearly every case within the Third Circuit analyzing the *Hensgens* factors (including *Hereford*, which Plaintiff admits to having reviewed), named John Doe defendants. *See, e.g.*, *Hereford*, 2021 WL 5834384, at *1 (permitting the plaintiffs to amend the complaint to identify individual defendants "in place of the previously identified Doe defendants"); *Agostino v. Costco Wholesale Corp.*, Civ. No. 19-8976 (MCA)(MAH), 2019 WL 6080242, at *4 (D.N.J. June 24,

---

[4] The Court acknowledges that the inclusion of John Doe defendants "carries no weight" in determining whether the action is removable, *see Hereford v. Broomall Operating Co. LP*, CIVIL ACTION NO. 21-3922, 2021 WL 5834384, at *3 (E.D. Pa. Dec. 9, 2021); however, the fact that Plaintiff did not include such defendants may suggest that the subsequent inclusion of Individual Defendants was done to destroy diversity.

9

2019) (finding that the plaintiffs "had a legitimate reason for failing to name" an individual defendant where they were unable to learn of his identity and "named John Does 1-10 as a safeguard"); *Montalvo*, 2010 WL 3928536, at *4 (permitting the plaintiff to amend the complaint to name individuals where the original complaint listed John Doe defendants).[5]

At oral argument, Plaintiff's counsel argued that Plaintiff signaled her intention to bring suit against Broomall Rehab administrators at the onset of the case by referring to the administrators in the Original Complaint. (May 16, 2022 Hr'g Tr. at 7.) The Original Complaint includes several allegations that "[the] cause of action is limited to Broomall's vicarious liability for the negligence of only these managerial/supervisory employees . . . including but not limited to the Administrator [and] Director of Nursing." (*See, e.g.*, Doc. No. 1-1 ¶ 137.) The Court is not convinced; these allegations do not signal that Plaintiff may have been planning to bring suit against the Individual Defendants. Rather, they signal that Plaintiff made the strategic choice to pursue claims against *only* the Institutional Defendants even though she knew the Individual Defendants played a role in setting the policies and making the decisions she claims eventually led to her mother's death.

Finally, an email Plaintiff's counsel sent Defendants' counsel shortly before amending the complaint suggests that Plaintiff made the amendment solely to escape this Court's jurisdiction.[6] (Doc. No. 14-1 at 12.) Plaintiff's counsel wrote,

---

[5] Like her failure to name John Doe defendants, Plaintiff was not diligent in her efforts to learn the Individual Defendants' identities from the onset of the lawsuit, further suggesting that she only added the Individual Defendants to escape diversity jurisdiction. Plaintiff agreed not to exchange initial disclosures in advance of the Initial Pretrial Conference (in contravention of Judge Marston's Policies and Procedures) even though such disclosures likely would have named the Individual Defendants. (*See* Doc. No. 7 at 4.) And Plaintiff's counsel never attempted to inquire of Defendants' counsel the identities of these individuals at the beginning of this litigation. (*See* May 16, 2022 Hr'g Tr. at 18–19.)

[6] Plaintiff does not dispute the authenticity of this email or otherwise contend that the Court should not consider it, so the Court will consider the email in evaluating Plaintiff's true motive for

> After review of your recently filed Motions to Dismiss[,] we will be amending our complaint pursuant to Rule 15(a)(1)(B). The amendment will: 1) clarify . . . that we do not intend to make a claim under the civil liability sections of the PREP Act, and 2) will also add parties, including the Administrator, Director(s) of Nursing and possibly the Medical Director.
>
> In light of Judge McHugh's opinion in the other Broomall cases, and in light of the Maglioli decision, we also intend to file a Motion to Remand. . . .
>
> The Amended Complaint will be filed next week, and we intend to file the Motion to Remand just after the New Year.

(Doc. No. 14-2 at 1.) The first stated purpose of Plaintiff's amendment was to clarify that she was not bringing a claim under the PREP Act, which would ensure the case did not present a federal question. The second stated purpose of Plaintiff's amendment was to add the Individual Defendants, thereby ensuring that the parties were no longer completely diverse. The fact that Plaintiff amended the complaint to make clear that the Court no longer had federal question or diversity jurisdiction, combined with the fact that Plaintiff was planning to move for remand on the heels of filing the Amended Complaint, suggests that the amendment was motivated by an effort to get the case out of federal court.

Considering these facts together (particularly the fact that Plaintiff was almost certainly aware of the Individual Defendants' identities at the time she initiated this action), it appears that Plaintiff's sole motivation in amending the complaint was to destroy diversity. Thus, the first *Hensgens* factor weighs heavily in favor of striking the amendment.

### 2. Timeliness

The second *Hensgens* factor asks the Court to look to whether the plaintiff was dilatory in

---

amending the complaint. *See Bancorp, Inc. v. Yaron*, Civil Action No. 14–7159, 2015 WL 4876330, at *4 (E.D. Pa. Aug. 14, 2015) (considering an email counsel for one defendant group wrote to counsel for another defendant group in deciding motion to remand).

amending her complaint. *Hensgens*, 833 F.2d at 1182. In considering whether a plaintiff was dilatory, courts "takes into consideration the length and nature of the delay." *Fields v. Zubkov*, No. 08–2016, 2008 WL 4447098, at *6 (D.N.J. Sept. 26, 2008).

As discussed above, Plaintiff's counsel admitted that he monitored the docket in *Hereford* and was likely aware of the amended complaint in that case (and, in turn, the identities of the Individual Defendants) within approximately one month of that amendment. (*See* May 16, 2022 Hr'g Tr. at 3–4, 8.) The amended complaint in *Hereford* was filed on September 17 (*Hereford* Doc. No. 11), but Plaintiff did not initiate this lawsuit until November 2 (Doc. No. 1) and did not amend her complaint until December 29 (Doc. No. 13).[7] This means Plaintiff waited over three months from the time she learned the Individual Defendants' identities to name them as parties to this lawsuit. And other than suggesting that the Individual Defendants were eventually named after a shift in litigation strategy, Plaintiff has not proffered a legitimate justification for the delay. Given this unexplained three-month delay, Plaintiff was dilatory in amending the complaint. *See Milko v. Int'l Flavors & Fragrances, Inc.*, Civil Action No. 15–8291 (MAS) (TJB), 2016 WL 8709998, at *7 (D.N.J. July 29, 2016) (holding that the plaintiff was dilatory in amending his complaint where he did so two months after filing the original complaint and fourteen days after removal without "any credible explanation for his inability to identify the John Doe defendants sooner"); *Parson v. Home Depot USA, Inc.*, Civil Action No. 13–4817, 2013 WL 6587316, at *3 (D.N.J. Dec. 13, 2013) (holding that the plaintiff was dilatory where he did not move to amend until thirty days after removal).

---

[7] Plaintiff argues that she was not dilatory because she amended the complaint within the time limits provided by the Federal Rules of Civil Procedure following Defendants' filing of their motions to dismiss. (Doc. No. 22 at 14.) However, the Court considers the fact that Plaintiff waited approximately three months *after* she learned of the Individual Defendants' identities, so, for the reasons explained above, the Court finds that the amendment was not timely and done for the purpose of destroying diversity.

The second *Hensgens* factor thus weighs in favor of striking the joinder.

### 3. Prejudice

Under the third *Hensgens* factor, the Court looks to whether a plaintiff would be prejudiced were they not allowed to join the additional defendants. *Hensgens*, 833 F.2d at 1182. Where the claims asserted against the newly joined defendants arise out of the same set of operative facts as the claims asserted against the originally named defendants such that they would be forced to litigate duplicative cases, it is more likely that the plaintiff would be prejudiced were the additional defendants not joined. *Taylor*, 2015 WL 5584781, at *6.

Plaintiff's claims against the Individual and Institutional Defendants arise out of the same set of facts. But Plaintiff's counsel explained at oral argument that it is too late for Plaintiff to initiate a state court action against the Individual Defendants—the statute of limitations has run. (*See* May 16, 2022 Hr'g Tr. at 8.) Since there is no risk of redundant lawsuits, there is no risk of wasting the parties'—or the federal and state judiciaries'—resources. *Contra Taylor*, 2015 WL 5584781, at *6.

Moreover, even though Plaintiff's claims against the Individual Defendants would likely be time barred, Plaintiff would not be prejudiced from their absence in this suit. Plaintiff asserts the same claims arising out of the same conduct against the Individual Defendants as it does against the Institutional Defendants, so the Individual Defendants are dispensable. *Avenatti*, 2021 WL 2143037, at *3 ("And he asserts each charge against Hunt equally against his employer, Fox News. That means that Hunt is dispensable. Rule 19 does not require joining joint tortfeasors or both principal and agent." (internal citations omitted)). Plaintiff would also not be prejudiced were the Individual Defendants stricken from the action because she can fully recover from the Institutional Defendants. *See id.* ("I need not remand just because the statute of

13

limitations may bar these claims, especially because Avenatti can recover fully without Hunt."); *Murphy v. United Fin. Cas. Co.*, CIVIL ACTION NO. 15-4199, 2015 WL 12834347, at *2 (E.D. Pa. Sept. 17, 2015) (finding that the plaintiff would not be prejudiced were he not permitted to join an individual defendant because he "could pursue a judgment against a deep-pocketed corporation" instead); *Grafstrom v. Chiquita Brands Int'l, Inc.*, Civil Action No. 11–387, 2011 WL 1475492, at *1 (E.D. Pa. Apr. 13, 2011) (finding that the plaintiff would not be prejudiced were an additional defendant not joined where the defendants who had already been named "h[ad] sufficient assets to satisfy any judgment in favor of plaintiff").

Because Plaintiffs would not be prejudiced if the Individual Defendants were not parties to this lawsuit, the third *Hensgens* factor weighs in favor of granting the motion to strike.

### 4. Equities

Finally, the Court must consider anything else bearing on the equities of the joinder. *Hensgens*, 833 F.2d at 1182. "Equitable factors considered by courts in this District include the efficient use of judicial resources, the effect remand will have on the defendant, and the expertise of the court relative to the applicable law." *Taylor*, 2015 WL 5584781, at *7.

As discussed above, the statute of limitations has run on Plaintiff's claims against the Individual Defendants, so it is unlikely that she would initiate parallel state court proceedings. *See supra* Section II.B.3. There are thus no risks of an inefficient use of judicial resources and no concerns that Defendants would be prejudiced by having to defend against parallel proceedings. Additionally, although Plaintiff brings only state law claims, Defendants have raised defenses under the PREP Act, a federal law, so this Court has expertise in the applicable law.

The equities are not particularly compelling in either direction, but given Defendants'

14

invocation of federal law, the equities weigh somewhat in favor of granting the motion to strike.

\* \* \*

In sum, all four *Hensgens* factors weigh in favor of striking the joinder, so the Court finds Plaintiff's joinder of the Individual Defendants impermissible. The Court cannot, however, grant Defendants' motion to strike in its entirety. We grant the motion to strike the claims brought against the Individual Defendants pursuant to the discretion afforded under Rule 21. But, as discussed above, Plaintiff amended the Original Complaint *as of right*, so the Court declines to strike the other changes in the Amended Complaint (i.e., the deletion of the word "willful").

### III. MOTION TO REMAND

The Court now considers Plaintiff's motion to remand. Plaintiff contends we should remand this matter to state court, as the Court has neither federal question nor diversity jurisdiction. (Doc. No. 23-1 at 7–8.) Defendants oppose the motion and argue that the Court has diversity jurisdiction over this matter. (Doc. No. 29.) A district court exercises diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states." 28 U.S.C. § 1332(a). Section 1332 requires "complete diversity" of citizenship—every plaintiff must be a citizen of a different state than every defendant. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990). There is complete diversity of citizenship between Plaintiff (who is a citizen of Pennsylvania) and the Institutional Defendants (who are citizens of Delaware or Georgia)[8] (Doc. No. 13 ¶¶ 1, 9–12), and the amount in controversy exceeds $75,000 (Doc. No. 1 ¶ 8). Thus, the Court enjoys diversity jurisdiction

---

[8] Because the Court grants the motion to strike as to the Individual Defendants, they are no longer parties to this lawsuit, so their citizenship is not relevant to the diversity analysis.

15

over this case, and Plaintiff's motion to remand is denied.[9]

## IV. CONCLUSION

For the reasons above, Defendants' motion to strike is granted in part, and Plaintiff's motion to remand is denied. An appropriate Order follows.

---

[9] Since the Court has diversity jurisdiction over this matter, we need not consider whether we also have federal question jurisdiction. Even if the Court were to consider whether we had federal question jurisdiction, we are bound by the Third Circuit's decision in *Maglioli v. Alliance HC Holdings, LLC*, 16 F.4th 393 (3d Cir. 2021).