IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROSE MARIE M. TESTA**, <br><br> Plaintiff, <br><br> *v.* <br><br> **BROOMALL OPERATING COMPANY, L.P.**, *et al.* <br><br> Defendants. | CIVIL ACTION <br><br><br> NO. 21-5148-KSM |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                                                                  **August 18, 2022**

Mary DeMarco tragically passed away from COVID-19 in April 2020 while residing at Broomall Rehabilitation and Nursing Center. (Doc. No. 13 ¶ 9.) Mrs. DeMarco's daughter, Plaintiff Rose Marie M. Testa, as Executrix of the Estate of Mary DeMarco, brings claims against Broomall Operating Company LP and Broomall Operating GL, LLC (together, "Broomall"). (*Id.*) Testa claims that Broomall's failure to adequately prepare for a pandemic and negligence in caring for elderly patients in the early days of the COVID-19 pandemic proximately caused Mrs. DeMarco's death. (*Id.* ¶¶ 122–214.) Presently before the Court is Broomall's motion to dismiss. (Doc. No. 36.) For the reasons below, the motion is denied.

**I.     BACKGROUND**

    *A.     Factual Background*

Accepting the allegations in the Amended Complaint as true, the relevant facts are as follows.

        **1.     Mrs. DeMarco's Death**

Following a fall at her home, Mrs. DeMarco was admitted to Broomall on February 6,

2019, for nursing, rehabilitation, and general self-care services.  (Doc. No. 13 ¶ 25.)  In April 2019, Mrs. DeMarco was moved to "long term care."  (*Id.* ¶ 28.)  Although she was first placed in the end stage dementia unit with a roommate, she was later moved to a single room in the nursing dementia unit.  (*Id.*)

On March 11, 2020, Broomall placed its facility on "lockdown" due to the COVID-19 pandemic, and the residents were no longer allowed to have visitors.  (*Id.* ¶ 29.)  Shortly after the nursing home went on lockdown, Testa dropped off laundry for her mother and observed nurses "taking off [personal protective equipment] and placing it into their bags with names on them."  (*Id.* ¶ 30.)  On April 2, the nursing dementia unit was "cleared out in preparation for any potential COVID-19 cases at the facility," and Mrs. DeMarco was transferred back to the end stage dementia unit, where she again had a roommate.  (*Id.* ¶ 31.)  Testa was unnerved by this move and asked a caseworker at Broomall whether anyone at the nursing home had tested positive for COVID-19; they informed her that no one had.  (*Id.* ¶ 32.)

On April 8, Testa had a video call with her mother and noticed that she was "a little disoriented."  (*Id.* ¶ 37.)  On April 12, Mrs. DeMarco had an elevated temperature.  (*Id.* ¶ 38.)  She took a Tylenol, and a nurse told Testa they would take bloodwork the following day.  (*Id.*)  On April 15, Mrs. DeMarco fell in her room.  (*Id.* ¶ 39.)  Mrs. DeMarco's medical records from the day of the fall indicate that her roommate had tested positive for COVID-19, and the staff suspected that Mrs. DeMarco had COVID-19 as well.  (*Id.*)  The staff alerted Testa that her mother had COVID-19 on April 17, after a test confirmed the diagnosis.  (*Id.* ¶¶ 42–43.)

Although she had tested positive for COVID-19, Mrs. DeMarco was permitted to travel out of her room to interact with other residents and get her nails done until she was placed in isolation on April 19.  (*Id.* ¶¶ 44–45.)  On April 20, Testa had a "window visit" with her mother

and noticed that she "was having trouble holding her head up, her teeth were completely brown, and she looked delirious." (*Id.* ¶ 46.) During that visit, Testa saw a man wearing a hazmat suit who she suspected to be in the National Guard. (*Id.* ¶ 47.) Testa asked the man what was wrong with her mother, and he said, "It's the virus. It's the COVID." (*Id.*) On April 22, Mrs. DeMarco passed away; her cause of death was "Sequelae of Novel COVID-19 Infection." (*Id.* ¶ 50.)

### 2. COVID-19 at Broomall

On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation recognizing the "threat of imminent disaster and emergency" COVID-19 posed to the Commonwealth. (*Id.* ¶ 53.) Broomall "locked down" on March 11, and the facility reported its first positive case on April 2. (Doc. No. 13 ¶¶ 57–59.)

By April 18, Broomall reported 49 positive cases, and the National Guard deployed twelve Army medics and six Air Force nurses to Broomall. (*Id.* ¶ 61.) Broomall executives asked the National Guard to leave on April 22—just four days after they arrived, and the same day Mrs. DeMarco passed away. (*Id.* ¶ 62.) By May 26, 155 residents at Broomall had contracted COVID-19, and 43 had died from the virus. (*Id.* ¶ 64.)

### 3. Citations for Inadequate Infection Control Measures

In the years leading up to the COVID-19 pandemic, Broomall had an "inadequate infectious disease protocol." (*Id.* ¶ 66.) In 2019, the Pennsylvania Department of Health inspected Broomall six times, identified 18 deficiencies (including one involving infection control), and fined Broomall $7,036. (*Id.* ¶ 67.)

On June 1, 2020, the Department of Health conducted an on-site "COVID-19 Focused Emergency Preparedness Survey." (*Id.* ¶ 74.) The Department of Health "cited Broomall for

numerous infractions and deficiencies, including Broomall's non-compliance with federal requirements for infection control." (*Id.* ¶ 76.) The Department of Health observed multiple members of the nursing staff in cloth masks (as opposed to more protective N95 masks) and other members of the nursing staff not wearing any mask at all. (*Id.* ¶ 78.) Based on these observations and conversations with Broomall employees, the Department of Health concluded that Broomall "failed to ensure that Personal Protective Equipment (PPE)s [*sic*] were used correctly and appropriately, and infection control practices were maintained." (*Id.* ¶ 77.)

### 4. Staffing at Broomall

Broomall earns "much" of its revenue through Medicare and Medicaid programs. (*Id.* ¶ 83.) Medicare pays nursing homes more to care for residents who require higher levels of care (*id.* ¶ 85), which incentivizes nursing homes to admit patients with more demanding medical needs (*id.* ¶ 87). In 2017, the Center for Medicare and Medicaid Services ("CMS") estimated that Broomall would provide its residents with 4.38 hours of nursing care per day, but Broomall provided only 3.56 hours of nursing care per day. (*Id.* ¶¶ 95–96.) This trend continued in 2018 (with Broomall providing 0.50 hours less of nursing care per day than expected) (*id.* ¶ 101) and 2019 (with Broomall providing 0.58 hours less of nursing care per day than expected) (*id.* ¶ 107). Testa estimates that Broomall saved nearly $5 million from 2017 through 2019 by staffing fewer nurses than necessary to provide the level of care CMS expected. (*See id.* ¶¶ 114–16.)

### 5. Broomall's Alleged Shortcomings During the COVID-19 Pandemic

Testa claims Broomall acted "negligently, grossly negligently, recklessly, and with reckless indifference" in a variety of ways, including by

- Failing to establish and maintain an infection prevention and control program;
- Failing to establish adequate policies to identify communicable

> diseases in the facility;
>
> - Failing to establish policies, precautions, and safeguards to prevent the spread of infection;
>
> - Failing to establish policies for when and how to isolate a resident with a communicable infection;
>
> - Failing to request assistance when it became clear COVID-19 was spreading throughout the facility;
>
> - Failing to test residents and staff for COVID-19;
>
> - Failing to maintain proper social distancing;
>
> - Failing to provide supplies for residents and staff to wash their hands;
>
> - Failing to provide employees with personal protective equipment; and
>
> - Understaffing the facility.

(*See, e.g.*, *id.* ¶ 131.)

### B.  *Procedural History*

On November 2, 2021, Testa initiated this action in the Delaware County Court of Common Pleas against Broomall.  (Doc. No. 1-1.)  Broomall timely removed the matter to this Court (Doc. No. 1) and moved to dismiss for failure to state a claim (Doc. No. 12).

On December 29, Testa amended the complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(A).  (Doc. No. 13.)  The Amended Complaint clarified that Testa was not bringing claims for willful misconduct under the civil liability section of the Public Readiness and Emergency Preparedness ("PREP") Act and added negligence and wrongful death claims against certain Broomall executives (who had not been parties to the lawsuit prior to the amendment).  (*Id.*)  On January 7, 2022, Broomall moved to strike the executives from the Amended Complaint.  (Doc. No. 14.)  And on January 25, Testa moved to remand the matter

5

back to the Delaware County Court of Common Pleas. (Doc. No. 23.) The Court granted the motion to strike and denied the motion to remand.[1] (Doc. No. 34.)

On June 9, Broomall moved to dismiss the Amended Complaint for failure to state a claim. (Doc. No. 36.) Broomall argues it is immunized from suit under the PREP Act, as its alleged wrongdoing has a "causal relationship" to the use of "covered countermeasures." (Doc. No. 36-1 at 10.) In the alternative, Broomall argues the PREP Act preempts the Amended Complaint and that the Pennsylvania Emergency Management Services Code immunizes Broomall from liability for claims "related to the contraction of COVID-19." (*Id.* at 15, 19–20.) Testa opposes the motion. (Doc. No. 38.) She argues the PREP Act does not preempt her claims, as she does not bring claims for willful misconduct. (*Id.* at 27.) She also contends that the PREP Act does not shield Broomall from liability, as its alleged wrongdoing does not relate to the *use* of a covered countermeasure. (*Id.* at 13–17.) Finally, she contends that the Pennsylvania Emergency Management Services Code does not shield Broomall from her claims, either. (*Id.* at 27–28.)

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

---

[1] The Amended Complaint also names Broomall's parent entities as Defendants. (*See* Doc. No. 13.) Those entities were dismissed by stipulation on June 15, 2022. (Doc. No. 37.)

unlawfully." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[2]

### III. ANALYSIS

Broomall raises arguments under the PREP Act and the Pennsylvania Emergency Management Services Code. The Court considers the arguments raised under each statute in turn.

#### A. *The PREP Act*

Congress passed the PREP Act in 2005 to shield covered individuals from liability in public health emergencies. 42 U.S.C. §§ 247d-6d, 247d-6e. The Third Circuit has explained the contours of the act:

> The Act lies dormant until invoked by the Secretary of the Department of Health and Human Services ("HHS"). If the Secretary deems a health threat a public-health emergency, he may publish a declaration in the Federal Register recommending certain "covered countermeasures." When the Secretary makes such a declaration, the covered individuals become immune from suit and liability from claims related to the administration of a covered countermeasure.

*Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 400–01 (3d Cir. 2021) (citing 42 U.S.C. §§ 247d-6d, 247d-6e). In March 2020, the Secretary declared COVID-19 a public health emergency under the PREP Act. *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201 (Mar. 17, 2020). The

---

[2] Defendants contend the Court should consider the preemption argument under Rule 12(b)(1) rather than Rule 12(b)(6). (Doc. No. 36-1 at 12–14.) The Court has diversity jurisdiction over the matter, so we find the preemption argument "is in the nature of a defense against suit and liability, not a jurisdictional defense." *See Hatcher v. HCP Prairie Vill. KS OPCO LLC*, 515 F. Supp. 3d 1152, 1156 (D. Kan. 2021). Thus, the Court considers all of Defendants' arguments under the standard set forth in Rule 12(b)(6). *Cf. Roma Concrete Corp. v. Pension Assocs.*, 384 F. Supp. 3d 507, 512 (E.D. Pa. June 3, 2019) (applying 12(b)(6) standard in considering argument that claims should be dismissed because they were preempted by Employee Retirement Income Security Act).

Declaration enumerates various "covered countermeasures," including drugs, devices, and products "used to treat, diagnose, cure, prevent, or mitigate COVID-19." *Id.*

Broomall argues that the PREP Act immunizes Broomall from liability or, in the alternative, that the PREP Act preempts Testa's claims. (Doc. No. 36-1 at 10, 15.) We consider each argument in turn.

### 1.     The PREP Act Does Not Immunize Broomall from Liability

The PREP Act immunizes "covered individuals" from "any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B). The parties agree that Broomall is a "covered individual" and that Testa's claims are "for loss," but they dispute whether the loss relates to the use of a covered countermeasure. Broomall argues the PREP Act applies to all claims related to covered countermeasures in any way at all, regardless of whether the covered countermeasures were ever used. (Doc. No. 36-1 at 18.) Testa responds that the PREP Act does not provide immunity where the defendant *failed* to use a covered counter measure. (Doc. No. 38 at 17.)

The PREP Act immunizes covered individuals from claims related to the "*administration to or use . . . of* a covered countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B) (emphasis added). Courts in this Circuit have resoundingly found that the PREP Act does not shield a covered individual from claims arising out of its *failure* to administer or use a covered countermeasure. *See, e.g.*, *Beaty v. Delaware Cty.*, Civ. No. 21-1617, 2021 WL 4026373, at *2 (E.D. Pa. Aug. 5, 2021) ("The term 'covered countermeasure' does not include 'social distancing, quarantining, [or] lockdowns.' Nor does a defendant's failure to take countermeasures fall within the scope of the Act's protection, even if such action was federally mandated." (internal citations omitted)); *id.* ("The consensus among district courts across the country, however, is that claims like

Plaintiffs' are outside the act's protection." (internal quotation omitted)); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20cv1198, 2020 WL 6140474, at *7 (W.D. Pa. Oct. 16, 2020) ("The allegations asserted by Plaintiff in her Complaint directly suggest that the decedent died because Brighton failed to use countermeasures. . . . Thus, Plaintiff's allegations do not fall within the purview of the PREP Act."); *Estate of Maglioli v. Andover Subacute Rehab. Ctr.*, 478 F. Supp. 3d 518, 532 (D.N.J. 2020), *aff'd sub nom*, *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021) ("Plaintiffs are claiming (inter alia) that the Defendants committed negligence in that, among other things, they failed to take countermeasures, some of them allegedly federally required. . . . Such claims concerning the quality of care do not fall within the scope of the PREP Act.").

Broomall argues we should reject this line of case law and instead rely upon an Advisory Opinion issued by the Department of Health and Human Services Office of General Counsel. (Doc. No. 36-1 at 20.)  The Advisory Opinion suggests the PREP Act provides immunity for non-use: "[D]ecision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by the PREP Act." Dep't of Health & Human Servs., *Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision*, at 4 (Jan. 8, 2021).  We decline to adopt the Advisory Opinion's expansive interpretation of PREP Act immunity.  It is inconsistent with the plain language of the PREP Act; agency advisory opinions are not binding on this Court; and a plethora of other courts have likewise rejected its expansive interpretation.  *See, e.g.*, *Beaty*, 2021 WL 4026373, at *2 (rejecting the defendant's invitation to follow the "HHS's advisory opinions and declarations, which purport to expand the PREP Act's scope"); *see also Jones v. Legacy Mgmt. Grp. of La. LLC*, CASE NO. 6:21-CV-00838, 2021 WL 3416993, at *3 (W.D. La. July 7,

9

2021) ("The opinion cites no supporting authority for its interpretation and explicitly states that it does not have the force or effect of law."); *Hatcher*, 515 F. Supp. 3d at 1161–62 ("Defendants also cite . . . Advisory Opinion 21-01 to claim that non-use or non-administration of covered countermeasures may fall within the PREP Act's immunity provisions. The court is not convinced from this guidance that the PREP Act covers the failures described in the amended complaint . . . .").

This Court is persuaded by the approach of other courts in this Circuit and finds that the PREP Act provides immunity only for the *use* of covered countermeasures, not the *non-use*.

Here, the Amended Complaint includes a litany of allegations about Broomall's failures to act, which allegedly caused Mrs. DeMarco to contract COVID-19:

- Broomall failed to establish an infection prevention and control program;
- Broomall failed to establish written policies to prevent the spread of communicable diseases;
- Broomall failed to adequately train its staff;
- Broomall failed to ensure its staff and residents were social distancing;
- Broomall failed to store and clean linens;
- Broomall failed to provide its staff with PPE; and
- Broomall failed to adequately staff the facility.

(*See* Doc. No. 13 ¶ 152.) But nowhere in the Amended Complaint does Testa allege that Broomall caused Mrs. DeMarco's death by administering a covered countermeasure (such as a vaccine or an antiviral medication). (*See generally id.*)

Testa's claims arise out of the shortcomings in the care Broomall provided its residents and Broomall's failure to take measures to prevent Mrs. DeMarco from contracting COVID-19.

The claims plainly do not arise out of Broomall's use of covered countermeasures, so the PREP Act does not shield Broomall from liability. *See Beaty*, 2021 WL 4026373, at *2; *Sherod*, 2020 WL 6140474, at *7; *Maglioli*, 478 F. Supp. 3d at 532. *Contra Roeder v. Polovitch*, Civil No. 5:22-cv-01796-JMG, 2022 WL 2819118, at *3 (E.D. Pa. July 19, 2022) (holding that claims against a nurse who administered a vaccination against COVID-19, which caused the decedent to pass out, fall into a coma, and die, fell within the scope of the PREP Act).

Although the PREP Act immunizes individuals who *used* covered countermeasures, it does not shield covered individuals who *failed* to use covered countermeasures. Testa's claims all relate to the *non-use* of covered countermeasures, so the PREP Act does not shield Broomall from liability.

## 2. Testa's Claims Are Not Preempted by the PREP Act

The PREP Act also provides "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1).

Broomall argues that Testa's claims arise out of alleged "willful misconduct" and thus are completely preempted by the PREP Act.[3] (Doc. No. 36-1 at 24.) Testa argues her claims are not preempted, as she "has expressly and repeatedly disavowed the notion that she has brought claims of willful misconduct" and, indeed, has "waive[d] any right to bring claims of willful misconduct against Defendant." (Doc. No. 38 at 9.) The Court agrees with Testa—she does not bring claims for willful misconduct, so the PREP Act does not preempt her claims.

---

[3] To bring a claim for willful misconduct under the PREP Act, a plaintiff must first exhaust her administrative remedies and may then bring the claim only in the U.S. District Court for the District of Columbia. *Maglioli*, 16 F.4th at 409 (citing 42 U.S.C. § 247d-6e(d)(1), 247d-6d(e)(1)). Were the Court to find the PREP Act completely preempts Testa's claims, Broomall contends, we would have to dismiss this matter for improper venue. (Doc. No. 36-1 at 25.)

The Third Circuit recently addressed this issue in *Maglioli*. The plaintiffs in *Maglioli* were the estates of individuals who died from COVID-19 at two nursing homes in New Jersey. *Maglioli*, 16 F.4th at 400. The plaintiffs brought negligence and wrongful death lawsuits against the nursing homes in state court, and the nursing homes removed the cases to federal court, on the ground that the PREP Act afforded federal jurisdiction. *Id.* The District Court remanded the cases to state court for lack of subject matter jurisdiction. *Id.* On appeal, the nursing homes asserted several grounds for federal question jurisdiction, including that the plaintiffs' claims were for "willful misconduct" and were thus preempted by the PREP Act. *Id.*

The Third Circuit determined that causes of action for willful misconduct are exclusive federal causes of action and cannot be maintained in state court to the extent the claims are for willful misconduct as defined by the PREP Act. *See Maglioli*, 16 F.4th at 409–10 ("Congress said the cause of action for willful misconduct is exclusive, so it is."). The PREP Act defines "willful misconduct" as "an act or omission that is taken-- (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c). The complaints in *Maglioli* included "standard language" alleging that the nursing homes "engaged in 'conduct that was grossly reckless, willful, and wanton.'" *Maglioli*, 16 F.4th at 411. The Third Circuit held that the allegations that the nursing home had acted "willfully" did not transform the plaintiffs' negligence and wrongful death claims into "willful misconduct" claims under the PREP Act. *Id.* It explained, "[W]e cannot infer from that fleeting statement that the estates allege the nursing homes acted with intent 'to achieve a wrongful purpose,' or with knowledge that their actions lacked 'legal or factual justification.'" *Id.* (quoting 42 U.S.C. § 247d-6d(c)(1)(A)).

12

Here, it is even clearer cut that Testa does not bring claims for willful misconduct. The Amended Complaint is replete with allegations that Mrs. DeMarco contracted COVID-19 "[a]s a direct and proximate result of the *negligent, grossly negligent, reckless, and recklessly indifferent* acts and omissions of Broomall[]" (*see* Doc. No. 13 ¶ 160 (emphasis added)), but there are no allegations that Broomall acted *willfully* (*see generally id.*). In fact, Testa included a footnote to emphasize that she "does not claim that the collective Defendants acted with intentional or willful or wanton disregard in the care of Mrs. DeMarco . . . ." (*Id.* ¶ 162 n.42.) Because there are no allegations Broomall acted willfully, it is clear that Testa does not bring claims for willful misconduct, and Testa's claims are not preempted by the PREP Act. *See Hereford v. Broomall Operating Co. LP*, 575 F. Supp. 3d 558, 562 (E.D. Pa. 2021) (holding that a plaintiff did not bring claims for willful misconduct under the PREP Act where the complaint merely alleged the defendants "knowingly disregarded" and/or "recklessly disregarded" certain risks).[4]

---

[4] In the preemption section of its brief, Broomall incorrectly cites to the allegations in the *Original Complaint*, as opposed to the Amended Complaint. The Court granted Broomall's motion to strike the individual defendants from the Amended Complaint, but the Amended Complaint is otherwise the operative complaint. (Doc. No. 34.) Broomall appears to recognize this, citing to the Amended Complaint throughout its Motion to Dismiss. (*See, e.g.*, Doc. No. 36-1 at 9, 12, 23 (citing to ECF No. 13).) Misleadingly, however, Broomall cites to allegations in the *Original Complaint* in the section on preemption, yet incorrectly references the Amended Complaint. (*See id.* at 25 ("While the Facility denies any allegation of ordinary negligence—let alone willful misconduct—it nevertheless recognizes that Plaintiff's Amended Complaint [*sic*] alleges claims for willful misconduct. *See* ECF No. 1 at ¶¶ 49; 54–63.").)

The Court underscores that the Amended Complaint is the operative complaint, but even the Original Complaint does not bring a claim for willful misconduct. The Original Complaint alleges that Defendants' "negligent, reckless, willful and wanton conduct" proximately caused Mrs. DeMarco's death. (*See, e.g.*, Doc. No. 1-1 ¶ 157.) But it does not allege that Defendants acted with the intent to "achieve a wrongful purpose," "without legal or factual justification," or "in disregard of a known or obvious risk," so even when they initially filed suit, Plaintiff's claims were not for "willful misconduct" as envisioned by the PREP Act, and therefore, were not exclusively federal causes of action. *See Hansen v. Brandywine Nursing & Rehab. Ctr., Inc.*, Civil Action No. 21-649-CFC, 2022 WL 608968, at *2 (D. Del. Jan. 19, 2022); *Guyer Estate of Markle v. Milton Nursing & Rehab. Ctr., L.P.*, No. 4:20-CV-02381, 2021 WL 5112269, at *2 (M.D. Pa. Nov. 3, 2021).

Moreover, to the extent Broomall is arguing the PREP Act *completely* preempts any state law claims, including negligence claims, that argument fails. (Doc. No. 29 at 10.) The Third Circuit addressed this issue in *Maglioli* and held otherwise. The PREP Act does not completely preempt state law claims—only those that "fall within Congress's narrow cause of action for willful misconduct." *Maglioli*, 16 F.4th at 412. The Court declines to depart from the Third Circuit's holding.

Testa brings state law negligence and wrongful death claims. She does not bring claims for willful misconduct, so the PREP Act does not preempt her claims.

### B. *The Pennsylvania Emergency Management Services Code*

The Pennsylvania Emergency Management Services Code immunizes agencies of the Commonwealth against negligence claims related to the provision of "emergency services." 35 Pa. Cons. Stat. Ann. § 7704(a). "Emergency services" are defined as "[t]he preparation for and the carrying out of functions . . . to prevent, minimize, and provide emergency repair of injury and damage resulting from disasters." *Id.* § 7102.

On March 6, 2020, Governor Wolf declared COVID-19 a disaster pursuant to the Emergency Management Services Code. *See* Pa. Off. of Gov., *Proclamation of Disaster Emergency* (Mar. 6, 2020). On May 6, Governor Wolf issued another order extending the Code's immunity to certain non-government actors, including individuals employed by nursing homes:

> I hereby designate the following classifications of individuals as agents of the Commonwealth solely and exclusively for purposes of immunity from civil liability due to emergency services activities or disaster services activities only as related to the Commonwealth's COVID-19 disaster emergency response . . . :
>
> Any *individual* who . . . is engaged in emergency services or the provision of disaster services related to the Commonwealth's COVID-19 disaster emergency response pursuant to my March 6,

14

> 2020 Proclamation of Disaster Emergency in the following types of facilities and care settings:
>
> Any health care facility, any nursing facility, personal care home and assisted living facility engaged in emergency services activities or the provision of disaster services activities related to the Commonwealth's COVID-19 disaster emergency response pursuant to my March 6, 2020 Proclamation of Disaster Emergency.

Pa. Off. of Gov., *Order of the Governor of the Commonwealth of Pennsylvania to Enhance Protections for Health Care Professionals*, at 9 (May 6, 2020) ("May 6, 2020 Order") (emphasis added). The Order further notes, "The aforementioned classifications of individuals (*and not the facilities or entities themselves*) shall be immune from civil liability . . . ." *Id.* (emphasis added).

Broomall argues the Governor's Order shields it from liability, as the alleged deficiencies in its care of Mrs. DeMarco "were carried out in the furtherance of Broomall Rehabilitation and Nursing Center's efforts to minimize and prevent the transmission of COVID-19 to Ms. DeMarco." (Doc. No. 36-1 at 27.) Testa argues the Order "provides absolutely no immunity to the facility itself." (Doc. No. 38 at 28.)

The parties and the Court agree this is an issue of first impression. (*See* Doc. No. 36-1 at 26–27.) But even though this is an issue of first impression, it is easily resolved. The language of the Order makes clear it immunizes only individuals, *not entities*. *See* May 6, 2020 Order ("The aforementioned classifications of individuals (*and not the facilities or entities themselves*) shall be immune from civil liability . . . ." (emphasis added)). Only two Defendants remain in this action, Broomall Operating Company LP and Broomall Operating GL, LLC, both of which are entities. Because both remaining Defendants are entities—not individuals—they are not shielded from liability by the Emergency Management Services Code or the May 6, 2020 Order.

15

**IV.    CONCLUSION**

For the reasons above, Broomall's motion to dismiss is denied.  An appropriate Order follows.